**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ANTONIO MURPHY,**<br>    **Plaintiff**<br><br>        v.<br><br>**McLANE EASTERN, INC. and McLANE/EASTERN, INC. t/d/b/a McLANE PA,**<br>    **Defendants** | **No. 3:16cv1055**<br><br>**(Judge Munley)** |

# **MEMORANDUM**

Plaintiff Antonio Murphy (hereinafter "plaintiff") asserts Defendants McLane Eastern, Inc. and McLane Eastern, Inc.'s t/d/b/a McLane PA (collectively "defendants") decision to terminate his employment violated federal and state anti-discrimination statutes and the Family and Medical Leave Act, 29 U.S.C. §§ 2601-2619, 2631-2654 and 5 U.S.C. § 6381-6387 (hereinafter "the FMLA").  Before the court for disposition is defendants' motion to dismiss plaintiff's FMLA claim pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  For the reasons explained below, we will grant in part and deny in part defendants' motion.

**Background**

The instant discrimination lawsuit arose from plaintiff's employment with defendants.  Plaintiff, an African American male suffering from

demyelinating disease,[1] severe vertigo, and an inoperable brain tumor, worked full-time at defendants' Jessup, Pennsylvania location from November 2012 until September 2014. (Doc. 1, Compl. (hereinafter "Compl.") ¶¶ 21, 23, 26, 32-33, 71). Plaintiff picked products off various conveyor belts and packaged them into shipping totes. (Id. ¶¶ 24-25). Prior to his termination, plaintiff received satisfactory performance appraisals and had no performance-related write-ups or discipline issues. (Id. ¶¶ 27-28).

In July 2014, plaintiff passed out at work. (Id. ¶ 29). An ambulance arrived and transported plaintiff to the hospital. (Id.) As a result of this medical event, plaintiff requested FMLA leave. (Id. ¶ 47). Defendants approved plaintiff's medical leave request. (Id. ¶ 48). Thereafter, in August 2014, plaintiff used one day of medical leave.[2] (Id. ¶ 48).

---

[1] The Mayo Clinic defines demyelinating disease as, "any condition that results in damage to the protective covering (myelin sheath) that surrounds nerve fibers in your brain and spinal cord. . . . Multiple sclerosis is the most common demyelinating disease of the central nervous system and no cure exists for any demyelinating disease." See http://www.mayoclinic.org/diseases-conditions/multiple-sclerosis/expert-answers/demyelinating-disease/faq-20058521 (last accessed Feb. 28, 2017).

[2] Plaintiff asserts he requested two days of medical leave. (Compl. ¶ 30). Plaintiff, however, used only one day of FMLA leave because defendants assign employees "ducks" for unscheduled time off. (Id. ¶ 31).

2

On September 18, 2014, plaintiff fell behind at his assembly line station, causing his line to back up. (Id. ¶ 52). Two of defendants' employees assisted plaintiff, including co-worker Lisa Murphy. (Id. ¶ 53). After completing a tote, Lisa Murphy "stormed off". (Id. ¶ 59). The defendants then called plaintiff into the human resource manager's office. (Id. ¶ 60). The human resource manager stated that a female employee alleged plaintiff touched her in an inappropriate manner. (Id. ¶ 61). Plaintiff adamantly denied this allegation. (Id.) The defendants immediately sent plaintiff home and terminated his employment on September 22, 2014. (Id. ¶ 71).

In response to his termination, plaintiff filed a four-count complaint. (Doc. 1). Count I alleges a racial discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. (Id. ¶¶ 94-103). Count II states a disability discrimination claim pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. (Id. ¶¶ 104-18). Count III avers racial and disability discrimination claims under the Pennsylvania Human Relations Act, 43 PA. STAT. ANN. § 951, *et seq*. (Id. ¶¶ 119-34).

---

Two (2) or more "ducks" may result in adverse employment or corrective actions. (Id.) As discussed in detail *infra*, plaintiff failed to explicitly allege he received ducks for his unscheduled time off.

3

Count IV asserts interference and retaliation claims pursuant to the FMLA. (Id. ¶¶ 135-57).  On August 15, 2016, defendants filed a motion to dismiss Count IV–plaintiff's FMLA interference and retaliation claims.  (Doc. 9). The parties then briefed the issues, bringing this matter to its present procedural posture.

**Jurisdiction**

The court has federal question jurisdiction over this FMLA action. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 28 U.S.C. §§ 1343(a)(3), (4) (granting district courts jurisdiction over civil actions brought to redress deprivations of constitutional or statutory rights by way of damages or equitable relief). We have supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Legal Standard**

The defendants filed their motion to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion.  All well-pleaded allegations of the complaint must be viewed as

true and in the light most favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'" Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cty. of York, 768 F.2d 503, 506 (3d Cir. 1985)).  The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint.  Phillips v. Cty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." Id. at 234-35.  In evaluating the sufficiency of a complaint, the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted).  The court need not accept legal conclusions or unwarranted factual inferences.  See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

**Discussion**

Defendants move to dismiss plaintiff's FMLA claim. The FMLA entitles "employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition." 29 U.S.C. § 2601(b)(2). "Eligible employees are entitled to '12 workweeks of leave during any twelve-month period.'" Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 300 (3d Cir. 2012) (quoting 29 U.S.C. § 2612(a)(1)).

The FMLA contains two relatively distinct provisions prohibiting employers from: (1) interfering with an employee's exercise of their right to take reasonable leave for medical reasons; and (2) discriminating or retaliating against an employee who exercises this right. 29 U.S.C. § 2615(a); see also Lichtenstein, 691 F.3d at 301 (explaining that under the FMLA, employers may not interfere with, restrain, or deny the exercise of or attempt to exercise FMLA rights, and employers may not discharge or in any other manner discriminate against any individual for opposing any practice made unlawful) (internal quotations omitted); Callison v. City of Phila., 430 F.3d 117, 119 (3d Cir. 2005) (same). Stated differently, interference claims derive from the denial of some benefit or protection

afforded by the FMLA, whereas retaliation actions pertain to whether an employer used an employee's FMLA leave as a negative factor in its decision to terminate her employment.  Capps v. Mondelez Global, LLC, –F.3d–, 2017 WL 393237, at *5, 9 (3d Cir. Jan 30, 2017).

In the instant matter, plaintiff asserts both an FMLA interference claim and an FMLA retaliation claim, which we will address *in seriatim*.

## I.  FMLA Interference

Plaintiff first asserts an FMLA interference claim, requiring plaintiff to establish: (1) he was an eligible employee under the FMLA; (2) the defendants were an employer subject to the FMLA's requirements; (3) he was entitled to FMLA leave; (4) he provided notice to the defendants of his intention to take FMLA leave; and (5) he was denied benefits to which he was entitled under the FMLA.  Ross v. Gilhuly, 755 F.3d 185, 191-92 (3d Cir. 2014) (citations omitted).  "Also, '[b]ecause the FMLA [interference claim] is not about discrimination, a McDonnell Douglas burden-shifting analysis[3] is not required.'"  Id. at 192 (quoting Sommer v. The Vanguard Grp., 461 F.3d 397, 399 (3d Cir. 2006)).

In the instant matter, defendants only contest the fifth element–the

---

[3]  McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

defendants denied plaintiff FMLA benefits, arguing they did not withhold any FMLA benefits from plaintiff.  Plaintiff contends the defendants did indeed interfere with his right to take unfettered FMLA leave.  Specifically, the defendants administered him "ducks" for taking two unscheduled absences arising from his July 2014 emergency treatment.  After a careful review, the court agrees with defendants.

The fifth element of plaintiff's interference claim requires him to demonstrate that the defendants "illegitimately prevented him from obtaining [FMLA] benefits."  Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 401 (3d Cir. 2007).  Here, plaintiff alleges that he passed out at work in July 2014.  (Compl. ¶ 29).  Shortly thereafter, an ambulance arrived and transported him to the hospital.  (Id.)  This medical event caused plaintiff to use two (2) unscheduled days off.  (Id. ¶ 30).  According to plaintiff, defendants assign employees "ducks" for unscheduled time off.  (Id. ¶ 31).  Two (2) or more "ducks" may result in adverse employment or corrective actions.  (Id.)

Plaintiff, however, failed to explicitly aver that he received ducks for these two unscheduled days off.  Absent such an allegation, plaintiff's complaint fails to assert defendants illegitimately prevented him from

obtaining FMLA benefits–that is, the ability to take unscheduled time off due to his July 2014 medical incident without receiving any adverse ducks or other employment action.  See Ross, 755 F.3d at 192 ("[W]e have made it plain that, for an interference claim to be viable, the plaintiff must show that FMLA benefits were actually withheld.") (citation omitted).  As such, the court will dismiss Count IV without prejudice and provide plaintiff an opportunity to properly allege all elements of his FMLA interference claim.

## II. FMLA Retaliation

Plaintiff also asserts an FMLA retaliation claim, requiring him to assert that: (1) he engaged in a protected activity under the FMLA; (2) he experienced an adverse employment action following the protected activity; and (3) a causal link exists between the protected activity and the adverse employment action.  Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997).  Here, defendants' motion to dismiss only attacks the third element–the existence of a causal link between the protected activity and the adverse employment action.

"To demonstrate a causal connection, a plaintiff generally must establish 'either (1) an unusually suggestive temporal proximity between

the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism, coupled with timing[,] to establish a causal link.'" Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 258 (3d Cir. 2014) (quoting Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007)); see also Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 196 (3d Cir. 2015) (noting that causation may be established by suggestive timing or other circumstantial evidence that supports the inference of retaliation). "Whether a causal link exists 'must be considered with a careful eye to the specific facts and circumstances encountered.'" Id. (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 n.5 (3d Cir. 2000)).  The Third Circuit has also emphasized that:

> it is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn. . . . When there may be valid reasons why the adverse employment action was not taken immediately, the absence of immediacy between the cause and effect does not disprove causation.

Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 178 (3d Cir. 1997).

Regarding temporal proximity, the Third Circuit has held that an adverse employment action occurring within ten (10) days from the date of the protected action is unduly suggestive. See, e.g., Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir. 2003) (ten days deemed

unduly suggestive); Lichtenstein, 691 F.3d at 307 (determining that termination less than a week after the plaintiff invoked her right to FMLA leave established causation); Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989) (reversing summary judgment for the defendant when plaintiff was fired two days after his employer received notice of his EEOC complaint).

The Third Circuit, however, has noted that a temporal proximity greater than ten (10) days requires supplementary evidence of retaliatory motive. See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 233 (3d Cir. 2007) (three months is not unusually suggestive); Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir, 2004) (two months is not unusually suggestive); Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003) (finding temporal proximity not unduly suggestive when three weeks had elapsed between protected activity and adverse employment action); Farrell, 206 F.3d at 280 (finding that temporal proximity greater than ten days requires supplementary evidence of retaliatory motive).

Stated differently, where temporal proximity is not unduly suggestive, the court must ascertain whether the evidence as a whole,

11

including evidence of intervening antagonism, nevertheless raises an inference of discrimination. LeBoon, 503 F.3d at 232; see also Daniels, 776 F.3d at 196 (requiring courts assessing the causal connection between the protected activity and adverse action to consider the circumstances as a whole when plaintiff's allegations may demonstrate an absence of close temporal proximity); Krouse, 126 F.3d at 504 ("When temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus."). "Among the kinds of evidence that a plaintiff can proffer are intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus." LeBoon, 503 F.3d at 232-33.

    In the instant matter, plaintiff's allegations fail to establish a close temporal proximity establishing a causal link between the protected activity and the adverse employment action. Plaintiff requested FMLA leave in July 2014. (Compl. ¶ 47). Shortly thereafter, the defendants approved plaintiff's FMLA leave. (Id. ¶ 48). Plaintiff used FMLA leave in August 2014. (Id. ¶ 48). Defendants terminated plaintiff's employment on

September 22, 2014.  (Id. ¶ 71).  Thus, even assuming plaintiff's FMLA leave occurred on August 31, 2014, at least eighteen (18) days passed before his termination, which fails to establish an unduly suggestive temporal proximity between the protected activity and the allegedly retaliatory action.  Shellenberger, 318 F.3d at 189; Lichtenstein, 691 F.3d at 307; Jalil, 873 F.2d at 708.

Having determined that the temporal proximity between the protected activity and the adverse action is not unduly suggestive, we next determine whether plaintiff's allegations as a whole raise an inference of discrimination.  After a careful review, we find that plaintiff has satisfied his burden regarding causation at this initial stage of litigation.

In August 2014, plaintiff requested multiple medical leave days under the FMLA.  (Compl. ¶¶ 30, 47-49).  Plaintiff, however, limited his leave to only one day in August 2014 because defendants wanted to "get rid of" him.  (Id. ¶¶ 50, 91).  Specifically, plaintiff avers that defendants previously terminated disabled employees or employees seeking FMLA leave.  (Id. ¶¶ 92-93).  As such, plaintiff understood defendants' unwritten rule to be that defendants will terminate employees for taking approved medical absences.  (Id. ¶¶ 48-50).

Plaintiff also alleges that within a month of utilizing FMLA leave, defendants manufactured a reason to terminate his employment.  On September 18, 2014, four days before his termination and within a month of taking FMLA leave, plaintiff worked on the packaging line.  (Id. ¶ 52).  Plaintiff fell behind and his line backed up.  (Id.)  Two employees arrived to help plaintiff catch up.  (Id. ¶¶ 53, 56).  After helping plaintiff catch up, one of the two employees, a female, stormed off.  (Id. ¶ 59).  Plaintiff did not know why the female employee stormed off, and he continued to work on his line.  (Id.)

Subsequent to the female employee storming off, the defendants called plaintiff into the human resource manager's office.  (Id. ¶ 60).  The human resource manager stated that a female employee alleged plaintiff inappropriately touched her.  (Id. ¶ 61).  Plaintiff adamantly denied this allegation.  (Id.)  The defendants immediately sent plaintiff home and terminated his employment on September 22, 2014.  (Id. ¶ 71).

Viewing plaintiff's allegations as true, plaintiff has sufficiently pled a causal connection between his protected activity and defendants' decision to terminate his employment.  Defendants history of terminating employees exercising their FMLA rights created an environment

conducive to employees foregoing or minimizing their FMLA leave. Moreover, plaintiff asserts that he never inappropriately touched the female employee on September 18, 2014, which raises a reasonable inference that defendants' reason for his termination is pretext to fire an employee in retaliation for exercising his FMLA rights.  Thus, the court will deny defendants' motion to dismiss plaintiff's FMLA retaliation claim.

**Conclusion**

Based upon the above reasoning, the court will grant in part and deny in part defendants' motion to dismiss plaintiff's FMLA interference and retaliation claims.  The court will dismiss plaintiff's FMLA interference claim without prejudice and provide plaintiff fourteen (14) days to properly allege all elements of his FMLA interference claim.  The court will deny defendants' motion to dismiss plaintiff's FMLA retaliation claim.  An appropriate order follows.

**Date:   02/28/2017**                                      **s/ James M. Munley**
                                                            **JUDGE JAMES M. MUNLEY**
                                                            **United States District Court**